UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ONIEL PENA, on behalf of himself and all others similarly situated,

                        Plaintiff,

   -v-

SP PLUS CORPORATION,

                        Defendant.

CIVIL ACTION NO.: 20 Civ. 1370 (GBD) (SLC)

**AMENDED OPINION & ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Oniel Pena ("Pena") filed this putative class and collective action asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, and the New York Labor Law, NYLL § 650 et seq. ("NYLL"), against Defendant SP Plus Corporation ("SP Plus"). (ECF No. 1 (the "Complaint")). SP Plus is the owner and operator of parking facilities throughout the United States, including over 200 in the New York City area. (Id. ¶ 12; ECF Nos. 28-3 at 5–8).[1] Pena seeks to recover: (1) unpaid minimum and overtime wages; (2) liquidated damages; (3) interest; and (4) attorneys' fees and costs. (ECF No. 1 ¶ 1).

Before the Court is Pena's Motion for Conditional Collective Certification and for Court Facilitation of Notice Pursuant to 29 U.S.C. § 216(b) (the "Collective Motion" (ECF No. 27)). Pena asks the Court to grant conditional certification of his FLSA claim as a nationwide representative collective action on behalf of "all parking attendants employed by [SP Plus] for the six-year period prior to the filing of the Complaint" (the "Proposed Collective"). (ECF No. 27-1 at 2). SP Plus

---

[1] Page numbers refer to the ECF page number, unless otherwise noted.

opposes the Collective Motion. (ECF No. 35). For the reasons set forth below, the Collective Motion is GRANTED IN PART to the extent that the Court authorizes conditional certification of a collective of parking attendants employed at SP Plus's parking facilities in New York City within three years before the filing of the Complaint in this action, and DENIED IN PART with respect to Pena's request for equitable tolling.

## II. BACKGROUND[2]

### A. Factual Background[3]

#### 1. SP Plus

According to its 2019 Annual Report, which Pena submits in support of the Collective Motion, SP Plus is a publicly-traded Delaware corporation that provides and supervises "all personnel necessary to facilitate daily operations, which may include cashiers, porters, baggage handlers, valet attendants, managers, bookkeepers, and a variety of ground transportation services, maintenance, marketing, customer service, and accounting and revenue control functions." (ECF No. 28-8 at 1, 6). SP Plus employs 23,900 individuals, 14,700 of whom are full-time and 9,200 of whom are part-time. (Id. at 10). It manages or leases 3,169 facilities, although how many of these are parking facilities is unclear from the record. (Id. at 26).

---

[2] In connection with the Collective Motion, I have considered: the Complaint (ECF No. 1); SP Plus's Answer (ECF No. 24); Pena's proposed order granting conditional certification (the "Proposed Order" (ECF No. 27-1)); Pena's Memorandum of Law (ECF No. 28); the Declaration of C.K. Lee and exhibits (ECF Nos. 29, 28-1–28-8); the Declaration of Oniel Pena (ECF No. 30 ("Pena Declaration")); the Declaration of Demarlo Rhodes (ECF No. 31 ("Rhodes Declaration")); SP Plus's Memorandum of Law in Opposition to the Collective Motion (ECF No. 35 (the "Opposition")); and Pena's Reply Memorandum of Law (ECF No. 38 (the "Reply")).
[3] SP Plus has disputed Pena's claims and denies any liability (see ECF No. 24), and therefore, nothing in the Factual Background should be deemed as a conclusive determination of any facts for purposes of any proceeding in this action.

Pena asserts that SP Plus is a "single integrated enterprise" under FLSA. (ECF No. 28 at 13). FLSA defines an "enterprise" as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all activities, whether performed in one or more establishments . . . ." 29 U.S.C. § 203(r)(1). Under the "single integrated enterprise" doctrine, "an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger 'single-employer' entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer." Spiciarich v. Mexican Radio Corp., No. 14 Civ. 9009 (SHS), 2015 WL 4191532, at *5 n.5 (S.D.N.Y. July 10, 2015) (citation omitted). "Whether a group of entities qualifies as a single integrated enterprise turns on four factors: '(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.'" Benzinger v. Lukoil Pan Americas, LLC, 447 F. Supp. 3d 99, 133 (S.D.N.Y. 2020) (quoting Brown v. Daikin Am. Inc., 756 F.3d 219, 226 (2d Cir. 2014)). As support for his assertion that SP Plus is a single integrated entity, Pena points to the following:

- SP Plus operates parking garage locations directly or through its subsidiaries;
- SP Plus "maintains regional and city offices throughout the U.S. . . .";
- As of November 27, 2020, SP Plus holds New York City Department of Consumer Affairs licenses for over 200 garages in New York City;
- SP Plus "launched the Parking.com website and mobile app as its primary online selling platform . . .";

- SP Plus "provides one phone number and one email address for customers who inquire about parking, assistance with their monthly parking account, or are interested in a quote for the monthly or daily parking rates";
- SP Plus posts on its website job openings for parking attendants throughout New York City;
- SP Plus displayed on Pena's paystubs the address of its Chicago, Illinois executive office;
- SP Plus "purchases comprehensive liability insurance covering certain claims that occur in the operations that [it] leases or manages including coverage for general/garage liability, garage keepers legal liability, auto liability and workers' compensation insurance for employees";
- SP Plus "had a policy of requiring employees rotate [sic] and transfer between the garages when necessary";
- SP Plus "garage and parking lot locations operate under either management type contracts or leave type contracts";
- SP Plus "standardize[d]" a "system of processes and controls that enables [it] to deliver" its services;
- SP Plus's "overall basic corporate functions . . . are based in [its] Chicago corporate office and Nashville and Orlando support offices";
- SP Plus "consolidates all revenues from all locations in the United States";
- SP Plus "has borrowings and credit facilities for operating needs of all its locations";

- SP Plus "consolidates good will for all locations to its balance sheet";

- SP Plus hedges interest rate and foreign exchange risks "for all locations through the parent company"; and

- SP Plus "has a centralized board and executive officers that overlooks [sic] all employees."

(ECF No. 28 at 14–18 (citing ECF Nos. 28-3, 28-4, 28-5, 28-6, 28-7, 28-8, 30, 31)).

### 2. Pena's employment

From May 14, 2016 until his termination on January 25, 2018, Pena worked as a parking attendant, primarily at SP Plus's parking lot at 140 West 51st Street in New York City (the "W. 51st St. Facility"). (ECF No. 30 ¶¶ 4, 6). Pena usually worked eight-hour shifts five (5) days per week, for an average total of 40 to 42.5 hours per week. (Id. ¶ 7). Throughout his employment, Pena was paid "the prevailing minimum wage rate." (Id. ¶ 8).

Pena alleges that SP Plus had two policies that violated FLSA. First, he alleges that SP Plus "had an improper system of rounding" his hours to the nearest 15 minutes, which resulted in his working additional time that was not recorded. (ECF No. 30 ¶ 9). Second, he alleges that SP Plus required him to clock out for one-half hour each shift for a meal break, but, because he "was required to be on call daily throughout [his] shift, [] as a consequence [he] often did not have a free and clear break." (Id. ¶ 10).[4]

---

[4] Pena alleges that SP Plus engaged in other employment practices that violated the NYLL (ECF Nos. 1 ¶¶ 44–50; 30 ¶¶ 11, 14–15), but does not seek collective certification as to his NYLL claims and therefore, the Court will not consider them here.

### 3. Other employees

In his Declaration, Pena provides the names of three other parking attendants whom he observed and with whom he spoke about not being "properly compensated for all our hours worked": Victor Gomez ("Gomez"), Gustavo Mejia ("Mejia"), and "Morris." (ECF No. 30 ¶ 5). Mejia and Morris primarily worked at the parking facility at the Marriot Marquis Hotel, 212 W 46th Street, New York City (the "W. 46th St. Facility"), and Gomez primarily worked at the W. 51st St. Facility. (Id.) Pena states that "all employees are subject to rotations," which required them to "fill in at parking garages that were short staffed." (Id. ¶ 6). Pena states that other employees were also paid the prevailing minimum wage rate and were subject to both the improper rounding and improper break policies. (Id. ¶¶ 8–10).

Pena states that, while he and Gomez worked at the W. 51st St. Facility, Gomez complained to him about the improper rounding of hours and being required to clock out for meal breaks they were unable to "actually take." (ECF No. 30 ¶ 12). While working at the W. 46th St. Facility, Mejia and Gomez also complained to Pena about the improper rounding and being unable to take meal breaks. (Id. ¶ 13).

Demarlo Rhodes, a non-party, worked as a parking valet for SP Plus from October 2018 until December 2019. (ECF No. 31 ¶ 1). From October 2018 until July 2019, Rhodes worked primarily at the parking garage at 60 East 44th Street, New York City (the "E. 44th St. Facility"). (Id. ¶ 3). From July 2019 until his termination in December 2019, Rhodes primarily worked at the parking garage located at 45-51 West 56th Street, New York City (the "W. 56th St. Facility"). (Id.) Like Pena, he was also "subject to rotations," and worked at the W. 46th St. Facility, as well as facilities on West 55th, West 57th, and West 58th Streets. (Id.)

During October 2018 until July 2019, Rhodes worked nine-hour shifts five (5) days each week. (ECF No. 31 ¶ 4). From July 2019 until his termination in December 2019, Rhodes worked ten-hour shifts four (4) days each week. (Id.). Throughout his employment, Rhodes was paid an hourly rate of $15.45. (Id. ¶ 5). Rhodes states that SP Plus also subjected him to "an improper policy of rounding." (Id. ¶ 6). Rhodes also states that SP Plus required him to clock out for one-half hour of every shift for a break that he "often" was unable to take due to having to assist customers. (Id. ¶ 7).

Rhodes provides the first name of five other parking attendants with whom he discussed wages: Eddie and Juan, who worked at the W. 46th St. Facility, and Francisco, Pedro, and Oscar, who worked at the W. 56th St. Facility. (ECF No. 31 ¶ 2). Rhodes states that when he worked at the W. 56th St. Facility, Francisco complained to him that they "were getting ripped" because SP Plus rounded their hours and required them to clock out for meal breaks they could not "actually take." (Id. ¶ 9). Eddie made similar complaints to Rhodes and told him that "other employees he spoke were [sic] suffering from these same issues." (Id. ¶ 10).

**B. Procedural Background**

On February 18, 2020, Pena filed the Complaint. (ECF No. 1). On September 25, 2020, SP Plus filed its Answer. (ECF No. 24). Following an initial case management conference on October 29, 2020, the Court set July 30, 2021 as the deadline for all fact discovery, and September 30, 2021 as the deadline for all expert discovery. (ECF No. 26).

On March 25, 2021, the Court held a discovery conference, following which it ordered, inter alia, SP Plus to produce to Pena a list of employees for the W. 51st, W. 46th, and W. 56th St. Facilities, and directed the parties to meet and confer to agree on a process to select sample

employees about whom SP Plus would produce additional information. (ECF No. 48 (the "3/25/21 Order")).[5]

On December 15, 2020, Pena filed the Collective Motion. (ECF No. 27). As noted above, the definition of the Proposed Collective in Pena's Proposed Order includes "all parking attendants employed by [SP Plus] for the six-year period prior to the filing of the Complaint." (ECF No. 27-1 at 2). In his Memorandum of Law, however, Pena refers to "non-exempt employees" whom SP Plus allegedly "failed to pay wages for all hours worked due to their time shaving policy and policy of improper rounding." (ECF No. 28 at 22). On January 20, 2021, SP Plus filed the Opposition, in which it argues that Pena has not alleged that SP Plus employed a policy that violated FLSA, and that he has failed to establish that he is similarly situated to all non-exempt employees at every SP Plus facility. (ECF No. 35). On January 29, 2021, Pena filed his Reply, arguing that he has established that SP Plus's rounding and break policies violate FLSA, and that he is similarly situated to all of SP Plus's non-exempt employees. (ECF No. 38).

### III. LEGAL STANDARD

Section 216(b) of the FLSA provides, in pertinent part:

> An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). While FLSA does not prescribe any procedures for approval of actions brought collectively by those who are "similarly situated," courts have long construed § 216(b) to grant

---

[5] In the 3/25/21 Order, the Court referred to the W. 56th St. Facility as the "8th Avenue" location. (ECF No. 48).

district court authority to order that notice be given to potential plaintiffs informing them of the option to join the suit. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."); Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978) ("Although one might read the [FLSA], by deliberate omission, as not providing for notice . . . it makes more sense, in light of the 'opt-in' provision of § 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case."). Although orders authorizing notice are sometimes referred to as orders "certifying" a collective action, FLSA does not contain a certification mechanism. See Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010). Thus, where a court refers to "certifying" a collective action, it means only that the court has exercised its discretionary power "to facilitate the sending of notice" to similarly situated individuals. Id. The recognition of a collective action is thus equivalent to a "'case management' tool for district courts to employ in 'appropriate cases.'" Id. (quoting Hoffmann-La Roche, 493 U.S. at 169, 174).

The Second Circuit has approved a two-step process to evaluate whether to approve a collective action. Myers, at 554–55. First, the court must make "an initial determination" whether to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs as to whether the alleged FLSA violation occurred. Id. at 555; Damassia v. Duane Reade, Inc., No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006). A plaintiff must make a "modest factual showing" that he and the potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." Myers, 624 F.3d at 555 (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). This standard of proof "cannot be satisfied

simply by unsupported assertions." Id. (internal citation omitted); see Guan Ming Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504, 509 (S.D.N.Y. 2010) (explaining that "plaintiff's supporting allegations must be specific, not conclusory"). At this first stage, the case has not typically "had the benefit of full discovery," and thus courts consider the pleadings as well as supporting affidavits from the named plaintiff to evaluate whether he has made the "modest factual showing" that he is similarly situated to potential opt-in plaintiffs vis-à-vis the defendants' unlawful employment practices. Korenblum v. Citigroup, Inc., 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016); see Almonte v. Marina Ice Cream Corp., No. 16 Civ. 660 (GBD), 2016 WL 7217258, at *1 (S.D.N.Y. Dec. 8, 2016). "For similar reasons, courts do 'not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations' at the first stage." Korenblum, 195 F. Supp. 3d at 480 (quoting In re Penthouse Exec. Club Comp. Litig., No. 10 Civ. 1145 (NRB), 2010 WL 4340255, at *2 (S.D.N.Y. Oct. 27, 2010)).

At the second step, on a more complete record following discovery, the district court determines whether a "collective action" may proceed based on the named plaintiff having shown that the plaintiffs who opted in are actually "similarly situated" to him. Korenblum, 195 F. Supp. 3d at 480. If the court is not convinced, it may "de-certify" the action and dismiss the opt-in plaintiffs' claims without prejudice. Id.

## IV. DISCUSSION

Applying these standards to the record here, the Court finds that Pena's evidence is insufficient to warrant conditional certification of a nationwide collective consisting of thousands of employees with differing job descriptions employed at hundreds, if not thousands, of worksites. As explained further below, the Court finds that Pena's evidence only supports a much

narrower collective, comprised of parking attendants who worked at the SP Plus locations in New York City as to which Pena's evidence has made a "modest showing" as having employed the rounding and break policies that may have violated FLSA as to similarly situated employees.[6]

### A. Pena Is Similarly Situated To Other Parking Attendants At SP Plus Facilities In New York City.

The test for determining whether a named plaintiff is "similarly situated" to the other members of a proposed collective is "whether there is a 'factual nexus' between the claims of the named plaintiff and those who have chosen to opt-in to the action." Davis v. Lenox Hill Hosp., No. 03 Civ. 3746 (DLC), 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004) (quoting Foster v. Food Emporium, No. 99 Civ. 3860 (CM), 2000 WL 1737858, at *1 (S.D.N.Y. Apr. 26, 2000)). The plaintiff's burden is "minimal." Cuzco v. Orion Builders, Inc., 477 F. Supp. 2d 628, 632 (S.D.N.Y. 2007). A plaintiff can satisfy this burden "by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Realite v. Ark Rest. Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).

"In this Circuit, courts have regularly found named plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs demonstrate that they were all subject to the same allegedly unlawful policy or practice." Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013). With respect to certification across a state or "smaller

---

[6] As SP Plus correctly notes, Pena's Motion is inconsistent regarding whether it seeks a collective of all parking attendants, or all non-exempt employees. (ECF No. 35 at 18; compare ECF No. 28 at 7 (defining "Covered Employees" as "all current and former parking attendants . . .") with ECF No. 38 (asking that collective include "all non-exempt employees")). The Court agrees with SP Plus, however, that, given the absence of any description of any category of employee other than parking attendant, let alone how Pena could be similarly situated to such other employees, it is appropriate to limit the proposed collective to parking attendants only. See Myers, 624 F.3d at 555 (noting that to be similarly situated, plaintiffs must have the same "job requirements") (citation omitted).

territory, courts consider whether the plaintiffs have made an adequate factual showing to support an inference that such a uniform policy or practice exists, and whether the locations share common ownership or management." Id.

As an initial matter, the Court agrees with SP Plus (ECF No. 35 at 16) that Pena's evidence is insufficient to merit certification nationwide, or even statewide, because he offers no evidence, not even hearsay, about SP Plus facilities elsewhere in this state or the United States. See Hamadou, 915 F. Supp. 2d at 666 (denying statewide collective certification where there was "no evidence of any untoward activity outside" the two territories in New York City the court did certify); Anglada v. Linens 'N Things, Inc., No. 06 Civ. 12901 (CM) (LMS) 2007 WL 1552511, at *5 (S.D.N.Y. May 29, 2007) (recommending denial of nationwide class where there was a "total dearth of factual support" for whether employees at any other store were similarly situated).

SP Plus also argues that any certification should be limited to only those garages at which Pena and Rhodes themselves worked. (ECF No. 35 at 18). To the contrary, the Court finds that Pena has shown that parking attendants at SP Plus's New York City parking facilities are similarly situated with respect to the alleged rounding and time-shaving policies such that certification of this narrower collective is appropriate. See Mentor v. Imperial Parking Sys., Inc. 246 F.R.D. 178, 181 (S.D.N.Y. 2007) (conditionally certifying collective of parking attendants at all 76 garages owned by defendants in New York City). First, Pena's and Rhodes' Declarations make the modest factual showing that they and other parking attendants held the same position, performed the same duties, were subject to the same rounding and time-shaving policies, and, as a result, were underpaid. See Shi Yong Li v. 6688 Corp., No. 12 Civ. 6401 (TPG), 2013 WL 5420319, at *2–3 (S.D.N.Y. Sept. 27, 2013) (finding that affidavits of two employees were sufficient to make the

"modest factual showing" that plaintiffs and proposed collective "were victims of common policies and plans that violated the law"). Both Pena and Rhodes attest that SP Plus's timekeeping system improperly rounded their hours down, and that they were required to work during their meal breaks, assertions that, if true, would result in the conclusion that SP Plus failed to pay them and other parking attendants the proper minimum and overtime wage rates in violation of FLSA. (ECF Nos. 30 ¶¶ 9–10; 31 ¶¶ 6–7). See Hamadou, 915 F. Supp. at 663–64 (conditionally certifying class of employees at all Hess gas stations in Queens and the Bronx where Plaintiffs, who worked only at a single station in Queens, made sufficient showing that the other stations utilized similar allegedly "unlawful timekeeping practices").

Second, Pena and Rhodes also attest that other employees, eight of whom they list by name and several of whom worked at other SP Plus parking facilities in New York City, similarly had their hours rounded and were required to work during their meal breaks. (ECF Nos. 30 ¶¶ 5, 9–10; 31 ¶¶ 2, 6–7). See Hamadou, 915 F. Supp. 2d at 664 (noting that "'courts in this Circuit regularly rely on [hearsay] evidence to determine the propriety of sending a collective action notice'") (quoting Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54, 59 (E.D.N.Y. 2011)); Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007) (noting that it is permissible to rely on "pleadings and affidavits, which necessarily contain unproven allegations"). In addition, Pena has shown that SP Plus: (1) is the named owner of the over 200 licensed parking garages in New York City (ECF No. 28-3); (2) lists all job openings in New York City on a single website (ECF No. 28-6); and (3) required parking attendants to rotate between garages in New York City as needed. (ECF Nos. 30 ¶ 6; 31 ¶ 3). Even though Pena himself primarily worked at one location (ECF No. 30 ¶ 6), the additional information from Rhodes and the other parking attendants whom

Pena and Rhodes observed is sufficient to satisfy the "burden of setting forth specific facts demonstrating that [he is] sufficiently similarly situated" to other parking attendants at SP Plus parking facilities in New York City. Harhash v. Infinity West Shoes, Inc., No. 10 Civ. 8285 (DAB), 2011 WL 4001072, at *3 (S.D.N.Y. Aug. 25, 2011) (conditionally certifying collective of employees at all of defendants' shoe stores in New York City); see Garcia v. Chipotle Mexican Grill, Inc., No. 16 Civ. 601 (ER), 2016 WL 6561302, at *6–9 (S.D.N.Y. Nov. 4, 2016) (conditionally certifying collective of all employees at all locations in New York City); Khamsiri v. George & Frank's Japanese Noodle Rest. Inc., No. 12 Civ. 265 (PAE), 2012 WL 1981507, at * 1 & n.1 (S.D.N.Y. June 1, 2012) (conditionally certifying collective of employees at all three of defendants' restaurants, which were "jointly owned and operated as a common enterprise" that shared signage, an entrance, and an address); Capsolas v. Pasta Res., Inc., No. 10 Civ. 5595 (RJH), 2011 WL 1770827, at *3–4 (S.D.N.Y. May 9, 2011) (conditionally certifying collective of waiters, servers, and bartenders who worked at all eight of defendants' New York metropolitan area restaurants where plaintiffs, who worked at only five of the restaurants, "carried their burden in making a modest factual showing that employees of all eight restaurants were subject to a common policy").

Finally, SP Plus's argument that Pena "has not presented sufficient evidence that there is a common policy that violates the FLSA," (ECF No. 35 at 13–16), is an argument that goes to the merits of Pena's claims, and therefore is misplaced at the conditional certification stage of this litigation. See Fasanelli, 516 F. Supp. 2d at 322 (collecting cases explaining that district courts must not resolve factual disputes or resolve issues that go to the merits of plaintiffs' claims at the conditional certification stage); Martinez v. Zero Otto Nove Inc., No. 15 Civ. 899 (ER), 2016 WL

3554992, at *4 n.3 (S.D.N.Y. June 23, 2016) (noting that defendants' efforts to "challeng[e] the factual accuracy of Plaintiffs' allegations" were "futile" at conditional certification stage); Zhao v. Benihana, Inc., No. 01 Civ. 1297 (KMW), 2001 WL 845000, at *2 (S.D.N.Y. May 7, 2001) (noting that court "need not evaluate the merits of plaintiff's claims" in deciding whether to grant conditional certification).

Accordingly, the Court GRANTS Pena's Motion in part, to the extent that the Court authorizes conditional certification of a collective of parking attendants employed at SP Plus's parking facilities in New York City within the last three years.

**B. The Notice Must Be Amended.**

Pena requests that notice of this action be sent to all non-exempt employees who worked at any of SP Plus's garages for the period six years before the Complaint was filed. (ECF Nos. 27-1; 38 at 13–14). SP Plus argues that such a notice period is improperly overbroad. (ECF No. 35 at 19–21). The Court finds that several corrections to the notice are appropriate.

First, SP Plus reiterates its argument that notice should only be sent to parking attendants at the four locations Pena and Rhodes described. (ECF No. 35 at 19–20). For the reasons set forth above, the Court authorizes notice to be sent to parking attendants at all of SP Plus's New York City locations.

Second, SP Plus opposes the six-year lookback period. (ECF No. 35 at 20–21). The FLSA has a two-year statute of limitations, or, in the case of willful violations, three years. 29 U.S.C. § 255(a). Because the question whether SP Plus willfully violated FLSA remains a disputed issue, and Pena has not yet moved for certification of his NYLL claims, the weight of authority in this Circuit provides that a three-year notice period is appropriate in these circumstances. See Garcia,

2016 WL 6561302, at *9 (permitting notice to be sent to hourly employees of defendants' New York City locations within three years before complaint was filed); Hamadou, 915 F. Supp. 2d at 668 (permitting notice to be sent to hourly employees at select gas stations within three years before complaint filed); Khamsiri, 2012 WL 1981507, at *1 (permitting notice to be sent to non-exempt tipped employees within three years before complaint filed); Guzelgurgenli v. Prime Time Specials Inc., 883 F. Supp. 2d 340, 356–57 (S.D.N.Y. 2012) (permitting notice to be sent to hourly employees who worked within three years before complaint filed); Jason v. Falcon Data Com, Inc., No. 09 Civ. 3990 (JG) (ALC), 2011 WL 2837488, at *7 (S.D.N.Y July 18, 2011) (permitting notice to be sent to all "technicians" whom defendants employed within three years before complaint filed); Fasanelli, 516 F. Supp. 2d at 323 (permitting notice to be sent to restaurant employees who worked within three years before complaint filed); Khalil v. Original Homestead Rest., Inc., No. 07 Civ. 695 (RJH) 2007 WL 7142139, at *2 (S.D.N.Y. Aug. 9, 2007) (permitting notice to be sent to employees who worked at defendant's restaurant within three years before complaint filed).

Third, SP Plus opposes Pena's request that notice be sent by email, in addition to first class mail. (ECF No. 35 at 21). SP Plus states that it did not "maintain personal email addresses for current or former employees in any searchable format." (Id.) Courts in this District have, however, required employers to provide "known email addresses" of employees for purposes of notice distribution. See, e.g., Fasanelli, 516 F. Supp. 2d at 324. Accordingly, the Court directs SP Plus to conduct a reasonable search for and provide known email addresses for current and former parking attendants, in addition to mailing addresses and telephone numbers, for purposes of distribution of the notice.

Fourth, Pena requests, and SP Plus does not oppose, translation of the notice into Spanish. (ECF No. 28 at 29). The Court agrees that translation into Spanish is appropriate in this case. See Khamsiri, 2012 WL 1981507, at *2 (ordering translation of notice and consent forms into Japanese); Garcia v. Pancho's Villa of Huntington Vill., Inc., No. 09 Civ. 486 (ETB), 2012 WL 1843785, at *3 (E.D.N.Y. May 21, 2012) (approving translation of notice and consent forms into Spanish); Cuzco, 477 F. Supp. 2d at 635 (ordering translation of notice and consent forms into Spanish).

Fifth, Pena proposes "posting of the notice, along with the consent forms, at each parking lot operated by [SP Plus] in New York City where Covered Employees are employed." (ECF No. 27-1 at 1). The Court notes that "posting at the place of employment of potential opt-in plaintiffs is regularly approved." Khamsiri, 2012 WL 1981507, at *2; see Jacob v. Duane Reade, Inc., No. 11 Civ. 610 (JPO), 2012 WL 260230, at *10 (S.D.N.Y. Jan. 27, 2012) (collecting cases). Thus, the Court orders that the notice be posted in each of SP Plus's parking facilities in New York City.

Finally, the Court notes that Pena's Proposed Notice fails to specify the deadline for potential plaintiffs to opt-in to this action. (ECF No. 28-1). Consistent with FLSA practice in this District, the Court finds that 60 days is a sufficient period of time for opt-in plaintiffs to submit their consent to join this action. See Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 451–52 (S.D.N.Y. 2011) (collecting cases and holding that 60 days was sufficient opt-in period).

The Court directs the parties to meet and confer to implement the Court's instructions as to the notice and by **June 4, 2021** submit a revised, redlined notice for the Court's review and approval. See Jason, 2011 WL 2837488, at *7 (directing parties to meet and confer about changes

to notice); Whitehorn, 767 F. Supp. 2d at 452 (directing parties to confer and submit revised notice in accordance with court's instructions); Fasanelli, 516 F. Supp. 2d at 324 (directing plaintiff to revise and resubmit notice).

### C. SP Plus Must Disclose Contact Information.

As is typical following a grant of conditional certification of a FLSA collective, the Court also orders SP Plus to provide within 15 days of this Opinion & Order a computer-readable list containing, for all parking attendants at its New York City parking facilities for the three-year period before the Complaint was filed: (i) name; (ii) last known mailing address; (iii) last known telephone number; (iv) email address if known; (v) work location(s); and (vi) dates of employment. See Garcia, 2016 WL 6561302, at *9 (ordering disclosure of contact information to facilitate notice); Khamsiri, 2012 WL 1981507, at *2 (noting that discovery of contact information is appropriate at the notice stage in FLSA collective actions); Iriarte v. Redwood Deli & Catering, Inc., No. 07 Civ. 5062 (FB) (SMG), 2008 WL 2622929, at *5 (E.D.N.Y. June 30, 2008) (ordering production of contact information for collective members); Fasanelli, 516 F. Supp. 2d at 324 (same); Cuzco, 477 F. Supp. 2d at 636 (same).

### D. Equitable Tolling Is Not Warranted.

Pena asks the Court to toll the statute of limitations for all potential opt-in plaintiffs until notice is distributed. (ECF No. 28 at 29). SP Plus opposes equitable tolling. (ECF No. 35 at 22–23). "Equitable tolling is appropriate 'only in rare and exceptional circumstances, where a plaintiff has been prevented in some extraordinary way from exercising his rights.'" Garcia, 2016 WL 6561302, at *10 (quoting Vasto v. Credico (USA) LLC, No. 15 Civ. 9298 (PAE), 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (internal citations omitted)). "An extraordinary

circumstance might exist if the employee shows that it would have been impossible for a reasonably prudent person to learn of the cause of action . . . or if the defendant concealed from the plaintiff the existence of the cause of action." Whitehorn, 767 F. Supp. 2d at 449.

The only circumstance to which Pena points to justify equitable tolling is SP Plus's assertion that it has only mailing addresses, not email addresses, for current and former employees. (ECF No. 38 at 15). The Court finds that this does not represent the sort of "rare and exceptional circumstances" necessary to justify equitable tolling. Garcia, 2016 WL 6561302, at *10 (denying request for equitable tolling). Even if the absence of email addresses were to delay distribution of notice—which Pena has not yet demonstrated—it "is not yet clear whether or not any potential plaintiffs will be barred from this action due to a delay in notice." Whitehorn, 767 F. Supp. 2d at 450. Because the Court has authorized notice to be distributed to a potentially large class of plaintiffs, "the determination as to the timeliness of each future plaintiff's action is better reserved for a future proceeding." Id. Accordingly, Pena's request for equitable tolling is DENIED "with the understanding that individual plaintiffs may seek such tolling on demonstrating its applicability" to that plaintiff's circumstances. Id.

## V. CONCLUSION

For the reasons set forth above, the Collective Motion is GRANTED IN PART and DENIED IN PART as follows:

(1) Pursuant to 29 U.S.C. § 216(b), the Court conditionally certifies this action as a collective comprised of parking attendants who worked at SP Plus parking facilities in New York City on or after February 18, 2017 (the "Collective").

(2) By **June 4, 2021**, the parties shall meet and confer regarding the Court-ordered changes to the proposed notice and submit a revised notice for the Court's review and approval.

(3) By **June 10, 2021**, Defendants shall provide to Plaintiff's counsel, for the members of the Collective, the following information: (i) name; (ii) last known mailing address; (iii) last known telephone number; (iv) email address if known; (v) work location(s); and (vi) dates of employment.

(4) Once approved by the Court, the notice and consent form (the "Notice") shall be mailed to all potential members of the Collective, who must opt-in to this action within 60 days of the date of distribution of the Notice.

(5) Pena's request for equitable tolling is DENIED without prejudice to any individual plaintiff's ability to request tolling on a showing that tolling applies to that plaintiff's particular circumstances.

The Clerk of the Court is respectfully directed to close ECF No. 27.

Dated:      New York, New York
              May 28, 2021

SO ORDERED.

_____
SARAH L. CAVE
United States Magistrate Judge